IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICARDO N. MURO,<br><br>Defendant. | **8:23-CR-118**<br><br>**MEMORANDUM AND ORDER ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255** |

This matter is before the Court to conduct an initial review of petitioner Ricardo N. Muro's *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Filing 105. Muro asserts a single ground for habeas relief: that his counsel provided ineffective assistance. Filing 105 at 4. For the reasons below, it plainly appears that Muro is not entitled to relief on his § 2255 motion and the motion is denied.

## I.  BACKGROUND

On January 17, 2023, Drug Enforcement Administration agents interdicted a package addressed to Muro's business. Filing 83 at 4. The package was shipped from California and contained over 6,000 grams of marijuana. Filing 83 at 5. Law enforcement agents conducted a controlled delivery of the package to Muro's business and searched the business pursuant to a search warrant, uncovering marijuana and tetrahydrocannabinol (THC) "gummies." Filing 83 at 4. Law enforcement agents also obtained a search warrant for Muro's residence in Omaha, Nebraska. Filing 83 at 4. During the search of Muro's residence, agents discovered approximately one kilogram of

1

cocaine, along with marijuana; THC cartridges; $9,380 in cash; a Ruger AR556 rifle, model 08500; ammunition; magazines; and a holster. Filing 83 at 4, 5.

On May 16, 2023, the grand jury returned a two-count Indictment charging Muro with possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count I) and possession with intent to distribute an amount of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count II). Filing 1. The Indictment also included a Forfeiture Allegation seeking forfeiture of the $9,380 seized from Muro's residence during the search warrant. Filing 1 at 2–3. The Indictment further alleged that before Muro committed the offenses charged in Counts I and II, he had a final conviction for a "serious drug felony, namely, a conviction under Title 21, United States Code, Section 846 for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense." Filing 1 at 1–2. On May 26, 2023, the Government filed an Information of Prior Conviction pursuant to 21 U.S.C. § 851 notifying Muro that the serious drug felony conviction referenced in the Indictment was "two convictions under Title 21, United States Code, Section 846 (U.S. District Court, District of Nebraska, 8:02CR26 & 8:14CR82)," and "[a]s a result of that conviction, [Muro] is subject to increased punishment under Title 21, United States Code, Section 841(b)(1)." Filing 15 at 1.

On July 12, 2024, Muro entered a guilty plea to Count I of the Indictment, and he did so pursuant to a Rule 11(c)(1)(C) plea agreement. Filing 54 (Text Minute Entry); Filing 57 (Plea Agreement. As part of the plea agreement, Muro admitted the Information of Prior Conviction, and he admitted the Forfeiture Allegation in the Indictment. Filing 57 at 1. The plea agreement provided that Muro's sentence would be between 200 and 240 months and that the Government would move

2

to dismiss Count II at sentencing. Filing 57 at 1, 3. Under the plea agreement, Muro also agreed to waive any and all rights to appeal his conviction and sentence, but he did retain the right to seek post-conviction relief based on ineffective assistance of counsel. Filing 57 at 3–4. Prior to sentencing, the Court accepted Muro's guilty plea but deferred accepting the Rule 11(c)(1)(C) plea agreement until it could review the presentence investigation report prepared by the United States Probation Office. Filing 64. A Revised Presentence Investigation Report (PSR) was prepared in this case, and that report calculated Muro's range of imprisonment to be 262 to 327 months under the 2023 United States Sentencing Commission Guidelines Manual. Filing 83 at 18. As calculated in the PSR, Muro's base offense level was 24, and his adjusted offense level was 26 after he received a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon (the Ruger AR556 rifle, model 08500; ammunition; magazines; and holster recovered during the search of Muro's residence). Filing 83 at 6. Muro's offense level was then increased to 37 because he was deemed a career offender under U.S.S.G. § 4B1.1(b)(1). Filing 83 at 7. After receiving a three-level reduction for acceptance of responsibility, Muro's total offense level was 34. Filing 83 at 7. The PSR allocated eight total criminal history points to Muro, including one point for a 2021 conviction for two counts of "Unrestrained Dog" and one count of "Dog Damage Property" and one point for a 2022 conviction for one count of "Failure to License Dog" and one count of "Unrestrained Dog." Filing 83 at 11, 12. Because Muro was a career offender under the Guidelines, his Criminal History Category was VI. Filing 83 at 12.

Muro's sentencing hearing was held on November 4, 2024. Filing 85 (Text Minute Entry). Given the disparity between the Guideline imprisonment range calculated in the PSR and the imprisonment range established by the Rule 11(c)(1)(C) plea agreement, the Court deferred accepting the plea agreement until after it heard allocution and argument on plea agreement. Filing

97 at 2. Prior to allocution and argument, the Court addressed Muro's objections to the PSR, which his defense counsel had filed on October 3, 2024. Filing 97 at 3–4; Filing 75 (Objections). Muro argued that the PSR improperly assigned him one criminal history point each for the 2021 and 2022 dog-related convictions set forth in paragraphs 45 and 46 of the PSR. Filing 75 at 1. Muro further contended that he was not a career offender and that he should not have received a two-level enhancement for possessing a dangerous weapon because the Ruger AR556 rifle and ammunition discovered during the search of his residence did not belong to him. Filing 75 at 4–6. The Court overruled Muro's objections on two grounds. First, the Court explained, the objections would not impact sentencing if the Court accepted the Rule 11(c)(1)(C) plea agreement because that binding plea agreement would dictate the sentence to be imposed. Filing 97 at 3. Second, the Court ruled, the objections were untimely both under Federal Rule of Criminal Procedure 32(f)(1) and under the Court's Order on Sentencing Schedule, Filing 58. Filing 97 at 4. The Court ultimately accepted the Rule 11(c)(1)(C) plea agreement and sentenced Muro to a term of 225 months of incarceration to be followed by eight years of supervised release. Filing 86 (Judgment).

Muro appealed his sentence to the Eighth Circuit Court of Appeals, making three arguments: (1) that Muro's guidelines should have been calculated under the Sentencing Guidelines in effect at the time of his offense, rather than those in effect at the time of his sentencing, because under the earlier Sentencing Guidelines, Muro's career offender status was in question; (2) that Muro should not have received a two-level sentencing enhancement for the possession of a firearm; and (3) that Muro should not have received criminal history points for his prior dog-related convictions. Filing 105 at 2; *see also* Docket, United States v. Ricardo Muro, Case No. 24-3369 (8th Cir. 2024). The Eighth Circuit dismissed Muro's appeal, concluding that the appeal waiver in Muro's Rule 11(c)(1)(C) plea agreement was "applicable to the issues raised in this appeal" and that there were

"no non-frivolous issues for appeal outside the scope of the appeal waiver." Filing 101 at 1–2; *United States v. Muro*, Case No. 24-3369, 2025 WL 1261067, at *1 (8th Cir. May 1, 2025) ("We conclude that the appeal waiver is applicable to the issues raised in this appeal. *See United States v. Scott*, 627 F.3d 702, 704 (8th Cir. 2010) (standard of review); *United States v. Andis*, 333 F.3d 886, 889–92 (8th Cir. 2003) (en banc) (appeal waiver will be enforced if appeal falls within scope of waiver, defendant knowingly and voluntarily entered into plea agreement and waiver, and enforcing waiver would not result in miscarriage of justice).").

Muro subsequently filed the Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 that is presently before the Court. Filing 105. The sole ground for habeas relief is that Muro's defense counsel provided ineffective assistance of counsel. Filing 105 at 4. Muro alleges that his counsel provided ineffective assistance during the plea-bargaining stage because (1) his attorney "did not investigate his Career Offender Status" because if she had done so, "she would have realized that the government's assertion that the petitioner was a Career Offender was eerroneous [sic] and wholly misplaced because of the Ex Post Facto Clause; (2) Muro "never would have agreed to the Rule 11(c)(1)(C) plea agreement with the guideline range of 200-240 months of imprisonment" if his counsel had not "fail[ed] to investigate" the "plausible claim" that he was not a career offender under a previous version of the Sentencing Guidelines; and (3) Muro "should not [have] receive[d] criminal history points" for his prior offenses involving dogs. Filing 105 at 16, 19, 20. Muro also argues that his counsel was ineffective based on her "own admission of ineffective assistance" during the sentencing hearing. Filing 105 at 21.

## II.  APPLICABLE STANDARDS

### A.  Standards Governing 28 U.S.C. § 2255 Motions

Muro brings his motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 599 U.S. 465, 472 (2023); *see also Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) ("Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks and citations omitted)). Relief under 28 U.S.C. § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012).

A judge receiving a § 2255 motion to vacate must first determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must order the Government to respond and consider holding a hearing. 28 U.S.C. § 2255(b); *see also* Rules 4(b) and 8(a) of the Rules Governing Section 2255 Proceedings. "A § 2255 motion can be dismissed without a hearing if '(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105 (8th Cir. 2011) (quoting *Sanders v.*

*United States*, 341 F.3d 720, 722 (8th Cir. 2003)). Put differently, "[n]o hearing is required . . . where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Franco v United States*, 762 F.3d 761, 763 (8th Cir. 2014) (internal quotation marks and citations omitted).

### B.  Standards Governing Ineffective Assistance of Counsel Claims

Muro's sole ground for habeas relief is an ineffective assistance of counsel claim. Under the Supreme Court's test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), courts consider "whether counsel's performance was deficient, and if so, whether prejudice resulted." *United States v. Harris*, 83 F.4th 1093, 1097 (8th Cir. 2023) (internal quotation marks and citation omitted). "Deficient performance is that which falls below the range of competence demanded of attorneys in criminal cases." *O'Neil v. United States*, 966 F.3d 764, 770 (8th Cir. 2020) (quoting *Bass v. United States*, 655 F.3d 758, 760 (8th Cir. 2011)). "Only a performance 'outside the wide range of reasonable professional assistance' is constitutionally deficient." *Id.* at 771 (quoting *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020)). To demonstrate prejudice, "a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Paulson v. Newton Corr. Facility, Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different outcome . . . 'must be substantial, not just conceivable.'" *Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

### III. LEGAL ANALYSIS

There are two prongs to Muro's ineffective assistance of counsel claim. The first prong is Muro's allegation that his counsel was ineffective during the plea-bargaining stage. *See* Filing 105 at 15. Muro makes several claims in support of this prong, and the Court will address each in turn. The second prong is based on Muro's assertion that his counsel admitted her own ineffectiveness "several" times during the sentencing hearing. Filing 105 at 21. As the Court explains below, regardless of whether Muro's counsel's performance was deficient, Muro has not shown the substantial likelihood of a different outcome. In other words, Muro has not shown that he was prejudiced by his counsel's allegedly deficient performance.

#### A.  Muro's Claim of Ineffective Assistance at the Plea-Bargaining Stage

The Court begins with Muro's claim that his counsel provided ineffective assistance at the plea-bargaining stage. Muro primarily takes issue with his counsel's calculation of his guidelines, arguing that "he never would have agreed to the Rule 11(c)(1)(C) plea agreement with the guideline range of 200-240 months of imprisonment" if his counsel had properly investigated his case and informed him "his guidelines were 78-97 or 57-71 months of imprisonment." Filing 105 at 19, 22. Muro reaches these guideline calculations by making the following arguments. First, Muro contends that he should not have received an enhanced offense level of 37 based on his designation as a career offender because "the government's assertion that [he] was a Career Offender was eerronous [sic] and wholly misplaced." Filing 105 at 16; *see* Filing 83 at 7. Without the career offender designation, Muro explains, his base offense level would have been 24, as calculated in the PSR, and his adjusted offense level would have been 26 due to a two-level enhancement for possessing a dangerous weapon, also as calculated in the PSR. Filing 105 at 19; Filing 83 at 6. Then, Muro argues that his

Criminal History Category should have been III instead of VI, as calculated in the PSR, because he should not have been a career offender and because he should not have received one criminal history point each for his dog-related convictions. Filing 105 at 19–20; Filing 83 at 11, 12. Based on an adjusted offense level of 26 and Criminal History Category III, Muro calculates his custody range under the Guidelines to be 78 to 97 months. Filing 105 at 19, 22. Muro further argues that his guideline custody range would have been 57 to 71 months if he had received the three-level reduction for acceptance of responsibility, which would have brought his total offense level to 23. Filing 105 at 19, 22. Believing these guideline calculations to be correct, Muro contends that "but-for counsel's unprofessional errors" in "fast track[ing] his case" and thereby failing to advise Muro of these calculations, "he would have never entered into the Rule 11(c)(1)(C) plea agreement." Filing 105 at 21–22.

### 1. Defense Counsel's Performance Was Not Deficient

When a petitioner fails to establish the prejudice prong of an ineffective assistance of counsel claim, the Court does not need to consider whether counsel's performance was deficient. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) ("If the defendant cannot prove prejudice, we need not address whether counsel's performance was deficient."). As the Court explains in Section III.A.2 below, Muro's claim of ineffective assistance of counsel at the plea-bargaining stage fails for lack of prejudice. The Court therefore is not required to linger on the nature of Muro's attorney's performance. Still, the Court will address defense counsel's challenged performance at the plea-bargaining stage because the Court strongly doubts that it was "outside the wide range of reasonable professional assistance." *O'Neil*, 966 F.3d at 770–71 (internal quotation marks and citation omitted) ("Deficient performance is that which falls below the range of competence demanded of attorneys in criminal cases." (internal quotation marks and citation omitted)).

9

a.  Muro's Career Offender Designation

Muro's first complaint is that his attorney failed to advise him that he was not a career offender. Filing 105 at 16. As reflected in the PSR, Muro received an offense level enhancement under U.S.S.G. § 4B1.1(b)(1) because he was designated as a career offender. Filing 83 at 7. Muro received the career offender designation because he "was at least 18 years old at the time of the instant offense of conviction; the instant offense of conviction [was] a felony that is either a crime of violence or a controlled substance offense; and the defendant ha[d] at least two prior felony convictions for a controlled substance offense." Filing 83 at 7; U.S.S.G. § 4B1.1(a). The PSR identified Muro's two prior felony convictions for controlled substance offenses as a 2003 federal conviction for conspiracy to distribute methamphetamine in case number 8:02CR26 and a 2014 federal conviction for conspiracy to distribute methamphetamine and cocaine in case number 8:14CR82. Filing 83 at 7, 8–11.

Muro argues that his two prior conspiracy convictions—both inchoate offenses—should not have qualified as predicate controlled substance offenses for the career offender enhancement and that his attorney should have realized as much. Filing 105 at 16. Muro's argument turns on whether the proper version of the Guidelines Manual was used to calculate his guidelines. The PSR indicates that Muro's guidelines were calculated using the 2023 Guidelines Manual.[1] Filing 83 at 6. In the 2023 Guidelines Manual, the career offender guideline explicitly states that a "controlled substance offense" includes the inchoate offenses of "aiding and abetting, attempting to commit, or conspiring to commit any such [controlled substance] offense." U.S.S.G. § 4B1.2(d) (2023). Muro contends that instead of the 2023 Guidelines Manual, the PSR should have used "the guidelines in effect at

---

[1] Muro was sentenced on November 4, 2024, shortly after the 2024 Guidelines Manual took effect on November 1, 2024. The text of U.S.S.G. § 4B1.2 is the same in both the 2023 Guidelines Manual and the 2024 Guidelines Manual.

the time of his offense," which would have been the 2021 Guidelines Manual.[2] Filing 105 at 18. As

Muro points out, in the 2021 Guidelines Manual, the text of the definitional guideline for the career

offender designation does not include inchoate offenses as a type of "controlled substance offense."

Filing 105 at 16; U.S.S.G. § 4B1.2 (2021). Instead, "[i]nchoate offenses were referenced only the

application notes to the [2021] Guideline's text." Filing 105 at 16; U.S.S.G. § 4B1.2, cmt. n. 1.

If the 2021 Guidelines Manual had been used to calculate Muro's guidelines, he argues,

Muro would not have been a career offender because his two prior conspiracy convictions would

not have fit the textual definition of a controlled substance offense. Filing 105 at 18 ("Petitioner

would have had strong arguments that the guidelines in effect at the time of his offense could not

lawfully confer career offender status."). Muro bases this belief on two Supreme Court cases—

*Stinson v. United States*, 508 U.S. 36 (1993), and *Kisor v. Wilkie*, 588 U.S. 558 (2019)—and three

cases from various Circuit Courts of Appeals—*United States v. Dupree*, 57 F.4th 1269 (11th Cir.

2023); *United States v. Nasir*, 17 F.4th 459 (3d Cir. 2021); and *United States v. Castillo*, 69 F.4th

648 (9th Cir. 2023). Filing 105 at 17. Muro further contends that the use of the 2023 Guidelines

Manual (instead of the 2021 Guidelines Manual) violated the Ex Post Facto Clause of the United

States Constitution because the 2023 Guidelines Manual "altered the starting point for [Muro's]

sentence," bringing the "starting guideline range . . . 'up'" and "influenc[ing] the court's choice of

sentence under the Rule 11(c)(1)(C) plea agreement." Filing 105 at 19. Ultimately, Muro faults his

attorney for failing to investigate the nature of his prior conspiracy convictions because if she had

done so, "she would have realized that the government's assertion that the petitioner was a Career

---

[2] Muro committed the offenses in this case in January of 2023. *See* Filing 1; Filing 57 at 2. At the time of the offense conduct, the operative Guidelines Manual was the 2021 version. The 2023 Guidelines Manual did not take effect until November 1, 2023.

Offender was eerroneous [sic] and wholly misplaced because of the Ex Post Facto Clause." Filing 105 at 16.

The Court is reluctant to find that Muro's counsel performed "outside the wide range of reasonable professional assistance" with regard to Muro's career offender status. *O'Neil*, 966 F.3d at 770–71 (internal quotation marks and citation omitted). In *United States v. Rivera*, 76 F.4th 1085 (8th Cir. 2023), the Eighth Circuit addressed a very similar argument to the one Muro asserts here. There, the defendant had been classified as a career offender under a version of the Guidelines Manual that included inchoate offenses only in the Application Notes, not in the actual text of U.S.S.G. § 4B1.2, and the defendant had received the career offender designation due in part to his prior conviction for being an accomplice to a crime of violence. *Rivera*, 76 F.4th at 1088–89. The *Rivera* defendant argued that "because the Guidelines fail[ed] to include aiding and abetting offenses, the commentary impermissibly expand[ed] the definition" of the predicate crime "beyond what the text allows." *Id.* at 1089. In considering the defendant's argument, the Eighth Circuit examined the same Supreme Court and Circuit Court cases that Muro cites in his § 2255 motion.

The Eighth Circuit first explained that following the Supreme Court's ruling in *Stinson*, which held that "the Guidelines commentary as to be treated as an agency's interpretation of its own legislative rule," the circuit decided in *United States v. Mendoza-Figueroa*, 65 F.3d 691 (8th Cir. 1995) (en banc), that "the commentary was a reasonable interpretation of the Guidelines and was within the Sentencing Commission's statutory authority." *Rivera*, 76 F.4th at 1089 (internal quotation marks and citations omitted). The circuit then noted that "[t]he law ha[d] undergone significant developments" since *Mendoza-Figueroa* became precedent and specifically acknowledged the Supreme Court's holding in *Kisor*, which established that "deference to an agency's own interpretation is to be afforded only" in limited circumstances. *Rivera*, 76 F.4th at

12

1089. The *Rivera* court acknowledged that following *Kisor*, "several of [its] sister circuits revisited the deference to be given to the Guidelines commentary and overruled their prior precedents, concluding the definition of controlled substance offenses in § 4B1.2(b) does not include inchoate crimes." *Id.* (citing *Dupree*, 57 F.4th at 1279; *Nasir*, 17 F.4th at 472; and *Castillo*, 69 F.4th at 664). However, the Eighth Circuit pointed out, the Fifth Circuit Court of Appeals continued to apply "*Stinson* deference" and had recently "reaffirmed its longstanding precedent that inchoate offenses like conspiracy are included in the definition of controlled substance offense." *Rivera*, 76 F.4th at 1089 (internal quotation marks omitted) (citing *United States v. Vargas*, 74 F.4th 673, 697–98 (5th Cir. 2023) (en banc)). Following a lengthy discussion of the standard of deference owed to Guidelines commentary and the "circuit disagreement" on the issue, the *Rivera* court ultimately decided that it was obligated to follow its precedent in *Mendoza-Figueroa*. *Id.* at 1091 ("The question, though interesting, is not one we are empowered to resolve today, as we are obligated to follow our precedent until it is overruled by the Court sitting en banc."). Under *Mendoza-Figueroa*, the Guidelines commentary "is a reasonable interpretation of the career offender guidelines," meaning district courts properly referred to the Application Notes in determining whether a defendant should be classified as a career offender under pre-2023 versions of the Guidelines Manual. *Mendoza-Figueroa*, 65 F.3d at 694; *see also United States v. Merritt*, 934 F.3d 809, 811 (8th Cir. 2019) (explaining that *Mendoza-Figueroa* "determined that conspiracy to commit a controlled substance offense is itself a controlled substance offense as defined by the Guidelines"). Because *Mendoza-Figueroa* still governed, the *Rivera* defendant's claim that his prior conviction for an inchoate offense should not qualify as a career offender predicate was "foreclosed by Eighth Circuit precedent." *Rivera*, 76 F.4th at 1091.

13

*Rivera* was decided in August of 2023—well over a year before Muro was sentenced on November 4, 2024—and the Eighth Circuit reiterated its *Rivera* conclusion on multiple occasions both before and after Muro's sentencing. *See, e.g.*, *United States v. Cupples*, 105 F.4th 1096, 1097–98 (8th Cir. June 27, 2024) (per curiam) (considering the defendant's argument that his prior Iowa conviction for conspiracy to manufacture methamphetamine was not a predicate offense under the version of U.S.S.G. § 4B1.2(b) and its Application Note 1 in effect at the time of sentencing because Application Note 1 "improperly added inchoate offenses to the definition of a controlled substance offense" and rejecting that argument on the ground that *Mendoza-Figueroa* and *Merritt* "are binding panel precedent that foreclose [the defendant's] argument"); *United States v. Nock*, 148 F.4th 607, 619 (8th Cir. Aug. 7, 2025) ("Our court has explained, however, that even after *Kisor* we consider the Guidelines together with their commentary, and a 'lawfully adopted, noncontradictory comment or application note that interprets or explains a Guideline will be given controlling weight unless plainly erroneous." (internal quotation marks and citation omitted)). In light of *Rivera*, even if the 2021 Guidelines should have applied to Muro—and the Court makes no determination of that issue—Muro's two prior conspiracy convictions still would have counted as predicate offenses under the career offender guideline, and Muro still would have been classified as a career offender. Accordingly, the Court cannot fault Muro's attorney for failing to advise Muro otherwise.

b.  Muro's Criminal History Category

Muro's second complaint builds on his first and involves his criminal history category. In his § 2255 motion, Muro argues that his attorney should have advised him that "his guidelines were 78-79 or 57-71 months of imprisonment with his (AOR) acceptance of responsibility." Filing 105 at 22. As the Court set forth in Section III.A. above, Muro reaches these guideline calculations by asserting that he was improperly designated as a career offender and that he was improperly assigned

one criminal history point each for his "prior offenses involving dogs," reflected in paragraphs 45 and 46 of the PSR. Filing 105 at 20; Filing 83 at 11. Because Muro was properly classified as a career offender, however, his criminal history category was locked at VI: "A career offender's criminal history category in every case under this subsection shall be Category VI." U.S.S.G. § 4B1.1(b).[3] Put differently, Muro would have been Criminal History Category VI regardless of whether he received any criminal history points for the dog-related convictions. The Court therefore cannot conclude that Muro's attorney's performance fell "below the range of competence demanded of attorneys in criminal cases" based on her failure to advise Muro of guideline ranges that did not apply to him. O'Neil, 966 F.3d at 770.

   2.  *Muro's Claim Fails Because He Has Not Shown that He Was Prejudiced By His Attorney's Performance*

Regardless of whether Muro's counsel's performance was deficient, Muro's claim of ineffective assistance at the plea-bargaining stage fails because he has not shown "that he suffered prejudice as a result" of his attorney's performance. Bass, 655 F.3d at 760. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Covington v. United States, 739 F.3d 1087, 1090 (8th Cir. 2014) (alteration in original) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Muro asserts that "but-for counsel's unprofessional errors," he "would have never agreed to the Rule 11(c)(1)(C) plea agreement with the guideline range of 200-240 months of imprisonment," Filing 105 at 19, 21, but he "has not demonstrated or even alleged that had counsel" advised him of the guideline calculations he sets forth in his § 2255 motion, "he would not have pleaded guilty and would have demanded a trial." Covington, 739 F.3d

---

[3] This provision is identical in both the 2021 Guidelines Manual and the 2023 Guidelines Manual.

at 1090. There is no indication in Muro's motion that he would have done anything besides plead guilty. *See generally* Filing 105. Because Muro has not "show[n] an overall reasonable probability of a different *outcome*" in his case, his claim of ineffective assistance of counsel during the plea-bargaining stage fails for lack of prejudice. *Donelson*, 16 F.4th at 573 (emphasis in original).

To the extent Muro's argument is actually that he did not knowingly and voluntarily enter the Rule 11(c)(1)(C) plea agreement establishing a sentencing range of 200 to 240 months, that argument is foreclosed by record. *See Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016) (providing that a habeas claim can be dismissed without a hearing if "the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact" (internal quotation marks and citation omitted)). "A decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside 'the range of competence demanded of attorneys in criminal cases.'" *DeRoo*, 223 F.3d at 923–24 (quoting *Hill*, 474 U.S. at 56). However, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) (internal quotation marks and citation omitted). Moreover, "[a] defendant's representations during the plea-taking process carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Thompson v. United States*, 872 F.3d 560, 566 (8th Cir. 2017) (quoting *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997)); *see also Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam) ("[T]o the extent [the petitioner] is claiming his plea was involuntary because his counsel rendered ineffective assistance, [the petitioner] must overcome strong presumptions of counsel's competence and of the voluntariness of his guilty plea based on his representations at the plea hearing." (internal quotation marks and citation omitted)). "[C]ourts should not upset a plea

solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," and "[j]udges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Thompson*, 872 F.3d at 567 (internal quotation marks and citation omitted).

Here, Muro's claim that he would not have entered the Rule 11(c)(1)(C) plea agreement but for his counsel's alleged failure to advise him of the "proper" guidelines is a *post hoc* assertion that is altogether untethered from Muro's representations at his change of plea hearing. During the change of plea hearing—while Muro was under oath—the magistrate judge and Muro engaged in a colloquy specifically addressing Muro's plea agreement:

> THE COURT: You've also agreed to a specific sentencing range in this case under Federal Rule of Criminal Procedure 11(c)(1)(C). Specifically, the parties agree that you shall receive a sentence between 200 and 240 months; is that correct?
>
> THE DEFENDANT: Yes.

* * *

> THE COURT: Regarding your written plea agreement, did you read and voluntarily sign it after fully discussing it with your attorney?
>
> THE DEFENDANT: Yes.
>
> [Counsel for the Government summarized the terms of the plea agreement.]
>
> THE COURT: Sir, do you agree with that summary of your written plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Does your written plea agreement contain all -- contain all terms, conditions, and promises that you've reached with the government in this case?
>
> THE DEFENDANT: Yes.

* * *

THE COURT: Sir, did you have a full opportunity to consider any plea offers made to you?

THE DEFENDANT: Yes.

THE COURT: After doing so, did you voluntarily sign this written plea agreement with the government?

THE DEFENDANT: Yes.

THE COURT: Did anyone make any other promises to you or threaten you in any way to get you to sign the plea agreement?

THE DEFENDANT: No.

THE COURT: Do you have any questions about your plea agreement?

THE DEFENDANT: No.

Filing 62 at 11, 13–16. The magistrate judge also asked Muro whether he was "fully satisfied with the representation provided and advice given to [him] in this case by [his] attorney," to which Muro responded, "Yes." Filing 62 at 7.

Muro's statements made under oath at his change of plea hearing are "contemporaneous evidence" of his decision to enter the Rule 11(c)(1)(C) plea agreement and they directly contradict his claim that he would not have signed the plea agreement if his attorney had advised him of different guideline calculations. *Thompson*, 872 F.3d at 567. Even assuming for the sake of argument that Muro's counsel should have advised Muro of the guideline calculations he sets forth in his § 2255 motion, "[i]naccurate advice of counsel about the sentencing guidelines or likely punishment does not render involuntary a defendant's decision to plead guilty, so long as the defendant is informed of the maximum possible sentence permitted by statute and the court's ability to sentence within that range." *Walker*, 810 F.3d at 578 (quoting *United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009)). During Muro's change of plea hearing, the magistrate judge advised him of both those things. *See* Filing 62 at 8 (advising Muro that the statutory maximum term of

18

imprisonment is life), 9 (informing Muro that the Court must consider the guideline range but could

impose a sentence outside of the range). Because Muro has not overcome the "formidable barrier"

of his "representations during the plea-taking," the Court denies any claim that Muro did not

knowingly and voluntarily enter the Rule 11(c)(1)(C) plea agreement. *Thompson*, 872 F.3d at 566

(internal quotation marks and citation omitted).

### B. Muro's Claim of Ineffective Assistance at the Sentencing Stage

The second prong of Muro's ineffective assistance of counsel claim is his assertion that his

attorney "made several admissions at his sentencing hearing that she render[ed] ineffective

assistance." Filing 105 at 21. The Court understands Muro to allege that his counsel provided

ineffective assistance at the sentencing stage. Muro is correct that during his sentencing hearing,

defense counsel declared her ineffectiveness several times on the record after the Court overruled

Muro's objections to the PSR that defense counsel had filed well after the deadline for doing so.

Muro's attorney made the following statements during the sentencing hearing:

> I don't believe that Mr. Muro should pay if I filed it late; and if I did file it late, it is ineffective counsel so I'm declaring my ineffectiveness on the record if this Court doesn't just take up the motion but we will take that up on appeal.

> * * *

> So once again I'm just declaring my ineffectiveness. I'd ask that this matter be continued so that he can have effective counsel.

> * * *

> So my point is this: Mr. Muro has raised some issues that may become important in the future. If I have failed him in, as the Court suggests, blowing off a date that is clear and I should have done it, then that's ineffectiveness and I'd ask for a continuance.

> * * *

19

> Well, it sounds like ineffectiveness. So I'd ask that a -- a CJA attorney be appointed to handle this case for Mr. Muro, I'd ask that new deadlines be -- be set so that CJA attorney can do the stuff that I have messed up, okay? And if this Court says no, then I'd ask that you clearly refuse my declaration of ineffective assistance and alternative counsel to go forward on a sentencing that includes the possibility of 200 months' incarceration and above.

Filing 97 at 6, 7, 8, 9. The Court responded that it was "not going to make a declaration of ineffectiveness on a Rule 11(c)(1)(C) plea agreement to a definite amount of time." Filing 97 at 9.

As the Eighth Circuit and other courts have noted, "'admissions of inadequate performance by trial lawyers are not decisive in ineffective assistance claims because '[i]neffectiveness is a question for the courts, not counsel.'" *United States v. Stone*, No. 24-10115, 2025 WL 2218879, at *7 (5th Cir. Aug. 5, 2025) (quoting *Walls v. Bowersox*, 151 F.3d 827, 836 (8th Cir. 1998)). This is so because even deficient performance does not constitute ineffective assistance of counsel if there is no prejudice. *DeRoo*, 223 F.3d at 925 ("To sustain his ineffective assistance of counsel claim, DeRoo must show 'his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case.'" (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988))). Here, even assuming that defense counsel provided constitutionally deficient representation at the sentencing stage when she failed to timely file Muro's objections to the PSR, Muro has not shown "an overall reasonable probability of a different *outcome*." *Donelson*, 16 F.4th at 573 (emphasis in original).

Indeed, Muro cannot show prejudice. Although the Court overruled Muro's objections to the PSR as untimely, the Court also denied the objections on the merits. Filing 97 at 20. Moreover, the Court expressly stated that defense counsel's failure to timely file the objections "ha[d] nothing to do with" the sentence the Court imposed and neither did the Court's "discussion" with defense counsel about the untimely filing. Filing 97 at 21–22. The Court adopted the Rule 11(c)(1)(C) plea

20

agreement only after hearing extensive argument in favor of the plea agreement from counsel for both parties, and once the Court accepted the plea agreement, the Court was bound by its sentencing range. Filing 97 at 11–18. In light of the Rule 11(c)(1)(C) plea agreement—which the record indicates Muro entered voluntarily and knowingly—Muro cannot show that any of his objections would have helped him at sentencing. Because Muro cannot satisfy the prejudice requirement, his claim of ineffective assistance of counsel at the sentencing stage must be denied.[4]

### C. Certificate of Appealability

No appeal may be taken on a § 2255 motion to vacate unless a judge issues a certificate of appealability, which requires the appellant to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)–(2). To make "a substantial showing of the denial of a constitutional right" after the district court denies a constitutional claim on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, a petitioner is entitled to a certificate of appealability if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Reasonable jurists

---

[4] In the second prong of his ineffective assistance of counsel claim, Muro also makes a passing allegation about his "first attorney [Mr. Nelson]," contending that the first attorney "did not show [Muro] his discovery for 11 months" even after Muro's wife sent "several messages requesting that his attorney [Mr. Nelson] allow him to review his discovery." Filing 105 at 21. The Court has reviewed the docket in this case and at no point has an attorney named Nelson represented Muro. Even if the Court assumes that Muro is referring to the attorney who represented him prior to the defense counsel referenced throughout the § 2255 motion, Muro's two-sentence allegation is not grounds for habeas relief because Muro has not alleged, must less shown, that but for his first attorney's performance "he would not have pleaded guilty and would have demanded a trial." *Covington*, 739 F.3d at 1090.

would not find the Court's decisions debatable here. Therefore, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

It plainly appears that Muro is not entitled to relief on his § 2255 motion. For this reason and for those explained above, Muro's § 2255 motion is denied. Because the Court has denied Muro's motion, there is no need for an evidentiary hearing. *See Franco v. United States,* 762 F.3d 761, 763 (8th Cir. 2014) ("No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." (internal quotation marks and citation omitted)). The Court therefore denies Muro's request for the appointment of counsel. Filing 105 at 22; *see* Rule 8(c) of the Rules Governing Section 2255 Proceedings (providing that only when an evidentiary hearing is warranted must the judge appoint counsel to a qualifying party). Accordingly,

IT IS ORDERED:

1. Petitioner Ricardo N. Muro's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Filing 105, is denied; and

2. The Court will not issue a certificate of appealability.

Dated this 4th day of June, 2026.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge

22